May it please the court, my name is Mario Pichella, SROM law firm in Columbia, South Carolina. I'm here to represent Ezekiel Dennison, the appellant in this case. This has to do with the finding of a supervised release violation. There are actually six violations and five of them were Class C violations. We're only challenging the first one, the Class A violation, which was possession with intent to distribute crack cocaine, for which Mr. Dennison received a 36-month sentence. Sotomayor Why didn't you ask the district court to correct the record in the judgment pursuant to Federal Rule of Criminal Procedure 36? Ezekiel Dennison Well, Your Honor, I actually was not the trial counsel, but I understand the question. Sotomayor Well, that is a good answer, though. Ezekiel Dennison But to presume, I'll actually make a point. So if this were a typical jury trial where the court gave a jury instruction as to one offense and did not give a jury instruction as to the lesser-included offense, and then their evidence was insufficient for the greater offense, that would become an acquittal. The judge would then have to enter an acquittal. Sotomayor Well, actually, the Supreme Court has concluded a variance like this could be where the wrong thing was alleged, and the court said it's harmless in the circumstances. But here we have a revocation proceeding, which the guidelines talk about as being sort of a breach of trust type of proceeding, which is initiated by the probation officer and describes the transaction. And the word crack cocaine gets used in there because that's what the officer thought it was, and it turns out to be powder cocaine. But everybody's talking about the very same transaction. And, of course, the statute is – basically, the statute doesn't – isn't based on whether it's crack or cocaine. The statute's basically whether it's a controlled substance. So we've actually held that in a case where somebody said that we didn't identify the substance. The prosecutor didn't identify the substance. They thought that was material. And the statute basically says any controlled substance, and it doesn't matter what's proved. There is a variance here, and you've pointed that out correctly, and it's troubling that somebody didn't fix it or correct it to cross all the I's – dot all the I's and cross all the T's. But the question I have is, really, did it have any effect on anything? In other words, he engaged in the transaction. The transaction's a Class A violation, even in powder cocaine. He had an opportunity to address it at a hearing, and the court discussed it. But the word crack persisted, didn't it? Yes, Your Honor. And, you know, I initially followed Amanda's brief in this case, and I'm going to explain why I was wrong in doing so. But I initially filed an Amanda's brief, and that's the issue, because PWID crack cocaine and PWID cocaine would be the same punishment under a Class A violation. They'd both be a Class A violation, and it'd be the same punishment. Of course – So you concede there was plain error here, right? I concede there was plain error. But that's the standard that we're reviewing. Yes, Your Honor. I scoured the record trying to find a way to argue – Going to Judge Niemeyer's point, where do we find that the error affected substantial rights? And that, Your Honor, there's a couple of ways to do it. First, the first point is that, again, this would be a – this is a tandem out to the fact that no one asked for the court to address this issue as PWID cocaine. The defendant did not ask for the judge to address that particular issue. The government did not ask for the court to address that as a particular issue. Well, that just leads to the error. But what I'm asking you is, how does that affect substantial rights? Because I'm – I think the appropriate remedy would be to vacate it and send it back to the district court to make a determination of whether it can even go forward with it with a PWID cocaine charge after the fact, after no one, no party – What initials are you using? Pardon? What initials are you using? Oh, sorry. PWID, Possession with Intent to Distribute. My apologies, Your Honor. All right. And it's just as a term of art, and I apologize. But you understand what plain error review is? Yes. And one of the things that you have to show is that the error here affected substantial rights. Yes, Your Honor, and that would be – And that's what I'm asking you. It might be a good idea to send it back, but the government – the standard you have to make is to show that this was a violation of substantial rights. And, Your Honor, a couple of points. First, I think the first point I would make is that it's asking – this court cannot stand in the shoes of the district court and make a factual finding. There's not been a factual finding by the district court whether it was – the substance was cocaine. So that's the starting point. And the second point is I don't believe that if you take – I don't understand that point. In other words, the fact that it was cocaine or crack cocaine, Judge Motz's question is what difference does it make in this case? They got – picked up cocaine. It was in rock form, but it was probably with water instead of some kind of base, cooked with some kind of base. But it looked like crack, but they picked up cocaine in its powdered form, and they tried it, and everybody testified to it, and it leads to the same result. It's the same Class A violation. What's the difference? I didn't quite understand it. So the probation officer charged my client with possession with intent to distribute crack cocaine. Yeah. He was put on notice to defend possession with intent to distribute crack cocaine. He defended possession with intent to distribute crack cocaine. Except he defended that transaction. Nobody had any doubt about that transaction. They went in there, and they found this stuff, and he says, well, this is maybe for personal use or whatever, but you have the baggies, and you have all the other evidence that the probation officer relied on. And the question, what difference does it make? They're defending the same transaction, and the officer said it looked like, and he field tested it, and it showed up for cocaine, but he says that doesn't make a distinction. And so then they came back from the lab, and it turns out to be powder, not crack. But the question is, did your client's interest get affected in any way? And, Your Honor, so he's put on notice to defend the PWID crack cocaine charge. He defends PWID crack cocaine. In the discussion with the court, the defense counsel asks that the judge consider simple possession of simple possession as well. That's the intent to distribute issue. Yes, Your Honor, and that is. And so as you read the transcript, it's clear that he's intending to proceed to defend the PWID crack cocaine charge, not to be defending. They never testified. Nobody contested that it wasn't crack or is crack or is powder. Nobody even addressed that point. That wasn't important to your client. Your client didn't come up and say, hold it. I had powdered cocaine, not crack. Now, the question even there would be, what's the difference in the outcome? But he didn't say that. He defended it as if he was engaged in that transaction and trying to lower it to a level B, a grade B, because he said, I really didn't intend to distribute. That's really the whole guts of the defense, wasn't it? That in addition to my client's defense that it wasn't even his, but that's not a relevant principle. Oh, yeah. Right. Exactly. Sure. Yeah. Sure. So I just, again, I draw the relationship to the request of the defense counsel to consider simple possession, the government's agreement that you can consider simple possession. Nobody asked the court to consider possession with intent to distribute cocaine or the powder cocaine form. Isn't that a different issue than the crack versus powder? In other words, whether it was crack or powder, the issue of distribution, it wasn't a lot of amount. It wasn't a great amount. And so the court had to derive circumstantial evidence, and it relied on the baggies, the residue on the baggies, and the six packages, I think, weren't there? Six packages, two marijuana or four marijuana and two cocaine or whatever. And so from all those circumstances, the court concluded this is a distribution possession, not just for personal use. However, you know, additionally. Scales. Oh, they had scales there, too, right? Yeah. Additionally, though, crack cocaine had been treated differently by the courts for years and years and years, and we don't have any indication if the court were to consider it as powder cocaine if he was going to conclude it was possession with intent to distribute in this instance or if he was going to impose the same punishment, otherwise potentially give a variance. And we don't have that indication in the record what the judge would have done had it been classified as concluded A, that. It's still an A violation. We don't know that he would have concluded an A violation. How could he not? He could have exercised discretion on the sentencing, but the drug distribution with intent to distribute is a controlled substance, and that is an A violation. But because of the low amount, we're close to the one-gram cutoff for simple possession. But that's the distribution issue. Yes, Your Honor, and I know. But in this particular instance, because crack cocaine has had a different connotation than powder cocaine, the court could have made a different conclusion with respect to whether it was simple possession or possession with intent to distribute. But the court didn't focus on the nature or the quantity because the quantity was small. The court relied on the six packages, the multiple bags, the scales, the 7,000 in cash, the rubber bands, the cell phones, the blue van. Those were the things that indicated distribution. I'm aware of that, Your Honor. However, we still don't have a definitive answer from the judge of how he would have handled it if it was considered powder cocaine. We don't have that answer, and that's one evidence of substantial effect of his rights or miscarriage of justice to have that opportunity for that argument to be presented to the district court. I've reserved five minutes of my time. I have more time left. I don't expect that I'll need eight minutes in rebuttal. Are there any other questions? Otherwise, I will have a seat and let you hear from the jury. Thank you, counsel. I appreciate it. Ms. Hamel. Yes, Your Honor. May it please the Court. Lauren Hamel on behalf of the United States. The judgment of the district court in this case should be affirmed. No remedy is warranted because, ultimately, the difference between crack and powder did not affect the defendant's substantial rights in this case. Your Honor. Were you the prosecutor below? I was, Your Honor. Did anybody suggest or point out when the lab report came in that it was powdered, that there should be a correction, at least on the record of the judgment? Your Honor, I don't believe that we ever saw that as an issue. I think that's reflected in the record. Well, it's not an issue, but it would be tidiness. It would be nice to, when you see an error like that, and it gets much more consequential if you see it in an actual criminal trial. Yes, Your Honor. It would be beneficial for tidiness to clarify that, Your Honor. Do you think it would make a difference if there was no other collateral evidence of, I call it collateral evidence of, I should say maybe corroborating is better, corroborating evidence of trafficking distribution. That means take away the triple bean, the baggies cut, all of those things, and it was just simply a matter of the substance turned out to be at that low gram weight of powder versus charged crack. Do you think it would make no difference there? I think it would be a closer question, Your Honor. In that instance, it would be more to the type of substance, the weight of that substance. Right. How much of it is it? Yes, Your Honor. Because the amount of powdered cocaine is consistent with personal use in this case, isn't it? I believe that is correct, Your Honor. Right. You can see the evidence here wasn't sufficient to prove possession of crack, right? I'm sorry, say that again, Your Honor, please. You can see the evidence here wasn't sufficient to prove possession of crack. I believe that is a much, much closer question, Your Honor. Why is it close? There's no evidence. There's no evidence of possession of crack, right? Your Honor, I believe there's evidence that it was consistent with crack cocaine, but ultimately, Your Honor, the chemists did say it was powder cocaine. So you're saying there was — I really don't understand the government's position. I thought that there was conceded that there was error here. The only question is what's the effect of the error. But you don't concede there was error here? There is a, Your Honor — There isn't any evidence of possession of crack, right? Yes, Your Honor. Isn't that correct? Yes, Your Honor. The substance was ultimately powder cocaine. So if we should affirm here, what is our limiting principle? Is the government suggesting that the defendant, every time the defendant commits some violation, even if it isn't charged and isn't found, that we should then convict on that basis? That we should affirm a sentence on that basis? No, Your Honor. Okay. So what is the limiting principle? Your Honor, the limiting principle here is that — No, no. The limiting — we're not interested in the limiting principle just for this case. We are looking — that's why I called it a limiting principle. We're applying it in the next case and the one after that. So what is it? Your Honor, the limiting principle is the nature of the conduct. Your Honor — The nature of the conduct? Yes, Your Honor. The defendant was charged with possession with intent to distribute a controlled substance. Ultimately, the court found that. The court found cocaine — But that's just telling me what the facts of this case are. Do you understand what I mean? If you read Supreme Court oral arguments, you'll often see one of the justices say, well, how do we write this opinion? What is the rule that we're establishing? So as I say, it's in the next case. It's not a difference in drug quantity. What's the rule? What error can we say, oh, we're going to overlook that error, no effect on substantial rights? I think that is the limiting principle, Your Honor. There is no effect on the defendant's substantial rights. How do we determine that? We determine that by whether there was a difference in the grade of the violation or the ultimate sentence that the court would have to find. Your Honor, if there is no change, there is no difference in terms of the guideline range the defendant would be facing or the sentence that the court would ultimately impose, Your Honor. There is no effect on his — What if the violation here had not been in the revocation petition? There was a violation, but it wasn't in the revocation petition. Your Honor, that would be a different question. I know it would be a different question. Yes, Your Honor. What advice are you giving us on how we would resolve that? We have this case now decided, and what would be the principle that we'd use to determine whether or not we would overlook the error there as we are overlooking it here? Your Honor, I think I'm going back to the same thing, but maybe I'm not making it clear. I think, though, what is required is that the defendant be put on notice of the nature of the alleged violation, and that was done in this case. So if it wasn't in the revocation petition, he wouldn't have been put on notice and we would reverse. Is that right? No, Your Honor. If it wasn't in the petition, Your Honor, he would have to be put on notice at some point. I'm saying it wasn't in, in my hypothetical. It's not in the revocation petition. There is a violation, but it's not in the revocation petition. If he is never put on notice, that's a different question. No, just stick with the facts that I give you. Yes, Your Honor. The only facts that I'm giving you are there is a violation of revocation, but it isn't in the notice of the revocation petition. That would be an error, Your Honor. Would it be an error that requires reversal? Would it be a harmless error? If he's never received notice of that. No, that's not never received because the defendant presumably knows everything he does. Yes, Your Honor. So he's always on notice. Yes, Your Honor. This is whether it's going to be regarded as a basis for violation of revocation and he gets the notice of revocation and it doesn't refer to this violation and then it comes out at the hearing. If it doesn't put him on notice of the conduct that will be used to revoke his supervised release, then that would be a violation. Here, that's different. What do you mean it would be a violation? It would be a, it would be. A basis for finding error, reversible error. A basis for finding error. Yes, Your Honor. Okay. Here, it's different though, Your Honor. I understand the situation is different, but what we're always trying to do is not just decide this case, but try to make some principles out there so people can know what the law is in a future similar case. Yes, Your Honor. And I think what's important is that the defendant be placed on notice of his conduct that will be used to constitute a violation and a revocation of his supervised release. That was done in this case. He was put on notice that his conduct was possessing a controlled substance with the intent to distribute that substance. The officers believed that it was crack cocaine. They testified that it was packaged consistent with crack cocaine. It was a white rock substance. I think even the chemist testified that in her analysis it was a rock substance, but ultimately tested as powder cocaine. Ultimately, Your Honor, it is actually the same type of substance, just a different form of that substance. Counsel, what makes Judge Mott's question so poignant here is I think about what you said when the question, did anyone think about it? You said, well, we didn't think that was even an issue. And I'm not suggesting cavalier, but you get to the point so far from normal due process that it's just fungible. It didn't matter whether it was crack or powder. He did something wrong. If you start going along that process, then the question becomes, what is the limitation? Is it like anything goes, okay, you possess something that you shouldn't have had. It's called contraband, generically. Then you get the answer, oh, it turned out to be this. You say, well, you didn't notice because during the hearing you heard it. But does that get too attenuated from notions of due process, particularly in criminal prosecution, albeit a revocation hearing? You see, that's what we're asking because when you respond and say, well, we didn't think it was an issue. But it is an issue because that's one of the guiding principles of our, I think, due process in the United States and justice, that you get notice of what it is. And I think our framers thought so too because in the Sixth Amendment and the Fifth Amendment and other places, they meticulously pointed those out and it's been expanded by case law. But certainly don't suggest that that's just, it doesn't matter. As long as what happened at the hearing establishes a violation, even though it was in or not in. Because you would say there's notice because you had the hearing. You had the hearing. That's not enough, is it? Notice at the hearing, Your Honor? No, it's not the fact that you were at the hearing and you had noticed what the evidence was then. Certainly, that's what I think Judge Motz was asking you. You never even put it in there. But you show up and you have a hearing and then you have, that's not the notice, is it? I don't think so, Your Honor. I think it is important that the defendant receive advance notice of the conduct that will be used to violate his supervised release. And, you know, that was done in this case. He received written notice that his conduct. I would think you could, I'm just considering Judge Motz's question, which I think is a very important question. But you might consider the possibility that they do have to receive notice of violation and be able to defend. And the question is when you have a misstatement in the notice about the substance, is the misstatement material? That might be a principle. I haven't thought it through, and I think we as a panel would have to think it through, too. But it may not go so far as to the questions that Judge Gregory was exploring with you, where you're totally blindsided. You're actually getting notice, but there is a portion of the notice that is in error, and may be in error. Because I was going to ask you this. Officer O'Reilly testified that when he was interviewing other people at the Myrtle House Police Department, those individuals gave post-Miranda interviews stating that Ezekiel Dennison was, that they had bought crack, heroin, and cocaine from him. And so there is some evidence that he was dealing in crack and cocaine, and powdered cocaine. And, of course, what they found in the apartment was only powder. But I don't know if that, the judge didn't seem to rely on that in any way. But there is a little evidence that he was in the distribution business of both powdered and crack. Yes, Your Honor. And I think that combined with the fact that the cocaine was actually packaged consistent with crack is why the officers believed it was crack, ultimately charged him with possession with intent to distribute crack. But you conceded properly with Judge Motz that the seized cocaine was powdered cocaine. It was not crack. Yes, Your Honor. Okay. And the only reason I was – And that was what's described, and that's for which he was put on trial, possession of that with intent to distribute. Yes, Your Honor. And the only reason I was getting to the distinction is because I think that the officers thought that it was crack, and they ultimately charged him with what they thought it was. Chemists analyzed it later. And the lab report talked about rock substances. It did, Your Honor. Right. Yes, Your Honor. They probably mixed it with water or something to make it easier to handle. Because when you cook cocaine, you cook it with what, baking powder or something like that.  I believe that that's correct. Sodium bicarbonate, I believe. You do a lot of those experiments in the office. No, Your Honor. I'm not a chemistry expert either, Your Honor. So let me ask you this. I thought about this. The question was put to your colleague, and I guess when he comes back up, maybe he'll get another shot at it or maybe he's finished. But the question is, since it's conceded this is plain error, it's pretty tough. You've got to show that it affected some substantial right. But let's look at the context. Because you can't have it, you can't have, you've got to look at the whole context. Back in 1987, when all the sentencing guidelines were put together, in their wisdom they said there was something intrinsic about crack, such that it was like 100 times the one type thing, and the underlaying of that was crack use was such a scourge and menace to society beyond powder. What I'm saying is that this person is going to be incarcerated and then his jacket becomes crack. Does that change the way people look at you? For example, well, when this person used powder cocaine, well, maybe that was just social. But when you say they used crack, oh, my goodness, crack. Were they in a crack house? You see what I'm saying? Because you can't have it both ways. That's what gave America such a disparaging disparity in sentencing because crack was something monstrous. But powder was something that was illegal but not as bad. So to put that label, I think counsel was saying that sort of maybe not, but that's what he's saying. He said, oh, he's now labeled a crack. He might as well put another term on it, crackhead. People who rob people and do all kinds of erratic things where powder cocaine is more like, well, you go to work every day. You run corporations. You do all kinds of things. But crack, you're like just a menace. So does that have perhaps an impact on his terms of his, how he's going to be dealt with in the system, how his probation officer deals with it when they look at, oh, crack violation? So we can't just pass it up because we as our country and our laws have given crack that status. So you can't just say, oh, well, crack, powder, what difference? Maybe they both got it. No, it's different. It's like, you think about it, like child pornography, you think there's a difference between whether or not you were looking at magazines that dealt with versus, no, child pornography, right, sauna. You got to tell everybody, your neighbors for the rest of your life, that I'm now next to you, and I looked at child pornography. I was convicted or something like that. Doesn't crack have that kind of connotation directly and ensconced in law and only now being peeled back by 782 and 710 and all those things. Isn't that right? So why is that not a substantial interest and a concern that he would have? Well, Your Honor, I don't know how that would affect him in the system. I don't know the answer of how a probation officer would do that or a parole officer or someone working in the Bureau of Prisons. Wouldn't you? Wouldn't you? Think about it. If you deal with somebody and say they're crackhead versus somebody who used powder cocaine, that's all you knew, you don't think that just automatically puts them in a different light? It possibly could, Your Honor, but in this case, Your Honor, the defendant was charged with possession with intent to distribute that. He wouldn't be labeled as a person using crack. He's labeled as a person possessing that crack with the intent to distribute it. Is crack worse? Is crack worse, Your Honor? No, is crack plus distributing? Yes, Your Honor, it's distribution of crack. Whatever crack is, that's a plus and negative. Plus meaning negative, even worse, right? It possibly could be viewed that way, Your Honor. But in this case. Because it deals with what kind of person sells crack cocaine? That's a person who's around those kind of people. Powder cocaine might be people who just go to social parties. They go to the disco. They don't call it disco anymore. But they go to the club, and then they just pass it around socially. But you're a crack dealer. Oh, you go into the dens. You're amongst those menacing people. Isn't that right? You know, Your Honor, I'm not sure what the answer is to that question. I know that crack is viewed as more powerful than powder cocaine. I'm going to take the time to look at some of the background work they did on why they made it such a difference ratio of 101 and justified it, what they said about crack, how much more it was. So much so that we have such a disparity in sentencing. And people in jail, months and months and months, 240 months, and all these long sentences. Your Honor, I would still argue that that does not affect the defendant's substantial rights. And what we have to look at is the outcome of the proceeding. Tell me one time, I'll leave you alone with this. Why not? Why not? Don't their lives matter in terms of how they're going to be perceived and being discouraged and a menace to society? Why is that not substantial rights? I think that's important. I don't know that that rises to the level of a substantial right, a constitutional right. And that would be my argument as to that. Your Honor, I'll just briefly conclude unless the Court has other questions. Your Honor, no remedy would be warranted in this case because ultimately the outcome of the proceeding would not have been different. If any remedy would be warranted, it would simply be to remand to amend the judgment in this case. And, Your Honor, we would respectfully request that the Court affirm the judgment of the District Court. Thank you, counsel. Thank you. Mr. Meyer. Thank you, Your Honor. I don't want to belabor any points. I think I want to address the issue of why isn't it just to remand for correction of the judgment. And with that regard, remanding to correct the judgment does not take into account what the District Court may or may not have done had it been considering the right charge. Considering a charge, probation officer charged PWID crack cocaine possession with intent to distribute crack cocaine. The government pursued the petition based on that, did not ask the Court to consider a lesser-included offense of possession with intent to distribute cocaine. I should note that cocaine actually is a lesser-included offense of crack cocaine, whether at whatever level you talk about possession or possession with intent to distribute or traffic. But it's all still within the grade-A violation, right? That's true. And, again, I understand that's the struggle because if the Court finds it. Counsel, when you came here this morning, did you know that you were going to be facing a plain-error standard? Yes, Your Honor. So you knew all the prongs of it, right? Yes. So then why is it, what is it, that substantial right that's implicated in there? Certainly, you'd like to go back, you'd like to do that. I would like to have government counsel for the United States to make that correction for the Court. I also would like defense counsel if that was to his or her advantage. But the United States represents something even higher in terms of getting it right and that the Court gets it right. But my question is, though, what difference does it make in terms of what you have to show? What is a substantial right? That's what I'm saying. Well, what is it? That's the due process right, being put on notice of a charge and being able to defend that charge before the Court. Does due process apply here? This is a civil action. It's still going to have a deprivation of liberty. No, there's a fairness requirement, sure. I mean, we're not going to ignore everything, but it's a much more, it's a breach of trust. He's already been sentenced. This is a, he's violated supervised release. And the question is, what is the recommended discretionary level as to how we're going to treat that? And we're not going to give up all rights. I just wanted to know as a legal matter whether due process has been held to apply to revocation proceedings. Maybe it has. Your Honor, I don't have the answer to that question. Okay. So, in conclusion, the substantial right would be the opportunity to challenge the specific charge if the charge is going to be possession with intent to distribute powder cocaine. There were opportunities for the Court. And out of this evidence, what would have been materially different in the defense if given that opportunity? Probably the best argument, Your Honor, would be that the sentencing would, rather than what the conclusion of the Court would be as to the violation, would be the actual, whether it is possession with intent to distribute, because 1.2 grams of cocaine, while it could be considered possession with intent to distribute, it could also be more consistent with simple possession. And that would bring it down to a... And that goes to other... And that brings it down to a grade B violation and different punishment. But there's other evidence. The Court had a lot of trouble with the overall, I mean, the blue van. I don't know if the blue van was involved in crack distribution. I can't remember how the overall conspiratorial connections were described. But I do know that they were looking at a much bigger operation, and the Court was aware of this. And so we're not talking about somebody who is found in his bedroom with a small amount of powder. We're talking about somebody who has been involved in distribution, who's connected with other people that are in jail, who had all these distribution items, the scales and the baggies and all this, and had trash in there and a pipe. It's a... I think the Court was impressed by the fact that this was a solid grade A violation. It wasn't borderline. I mean, Your Honor, I have to concede that the Court went through a thorough analysis of why I concluded it was possession with intent to distribute crack cocaine and the possession with intent to distribute prong of that. I have to concede that, but that doesn't necessarily translate to possession with intent to distribute cocaine because of the concept that crack cocaine has a different connotation to it and could lead a judge to conclude that there should be a greater punishment because of it. Thank you, Your Honor. Thank you.
judges: Roger L. Gregory, Paul V. Niemeyer, Diana Gribbon Motz